**UNITED STATES of America, Appellee,**

v.

**Raymond CAMPO, Defendant–Appellant.**

No. 97–1113.

United States Court of Appeals,
Second Circuit.

Argued Jan. 26, 1998.

Decided March 27, 1998.

Jeffrey H. Lichtman, Law Offices of Gerald L. Shargel, New York City, for Defendant–Appellant.

David C. James, Assistant United States Attorney for the Eastern District of New York, Brooklyn, NY (Zachary W. Carter, United States Attorney for the Eastern District of New York, Miriam R. Best, of counsel), for Appellee.

Before: CARDAMONE, CABRANES, and HEANEY,* Circuit Judges.

PER CURIAM:

Defendant-appellant Raymond Campo appeals from a judgment of conviction and sentence dated January 6, 1997, in the United States District Court for the Eastern District of New York (Thomas C. Platt, *Judge* ). We vacate Campo's sentence and remand the case to the district court; we also direct that the case be reassigned to a different judge for resentencing in order to preserve the appearance of impartiality.

## I.

In August 1993, Campo agreed to provide information to the government concerning a fraudulent bank loan he had obtained from the Anchor Savings Bank in Rockville Center, New York. In return for information regarding the bank officer who allegedly assisted Campo in obtaining the fraudulent loan, Larry Montgomery, the government agreed not to prosecute Campo. Montgomery was subsequently indicted for conspiracy, bank fraud, and bank bribery. In the course of preparing for trial, the government learned that Campo had made certain misrepresentations to the Federal Bureau of Investigation ("FBI") and determined that Campo had breached his cooperation agreement and could not be called as a witness.

Accordingly, the government moved to dismiss the conspiracy count against Montgomery, who was subsequently tried and acquitted on the remaining charges. In light of his breach of the cooperation agreement, the government renewed its prosecution of Campo.

During the course of its continuing investigation of the Anchor Savings Bank fraud, the government learned of other crimes committed by Campo. Specifically, the government learned that Campo had been involved in a leasing fraud and money laundering scheme with Terris Lee Barber and Daniel Malavet, the owner and bookkeeper, respectively, of a computer equipment and office furniture company. Barber and Malavet pled guilty to mail fraud charges and agreed to testify against Campo, who in January 1996 was indicted on eight counts relating to the Anchor Savings Bank fraud, the money laundering scheme, and the false statements he made to the FBI in violation of his cooperation agreement.

Notwithstanding the outcome of Campo's earlier cooperation agreement, the government again entered into discussions with Campo about the possibility of reaching a new agreement. During a series of proffer sessions, Campo disclosed his participation in, and his willingness to provide information regarding, a criminal enterprise in which he had modified the cars of drug dealers to facilitate the hiding of drugs in secret compartments. This conduct occurred in the Southern District of New York, while Campo's other criminal activities had occurred in the Eastern District of New York. In May 1996, Campo entered into a single cooperation agreement with the United States Attorney's Offices for both the Eastern and Southern Districts of New York, agreeing to furnish information regarding his criminal activities and to plead guilty in the Eastern District to all the charges for which he had originally been indicted and to a felony information charging him with aiding and abet-

---

* The Honorable Gerald W. Heaney, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

ting the distribution of cocaine.[1] In return, the government agreed to file a motion under U.S.S.G. § 5K1.1 ("5K1.1"), which would authorize the court to impose a sentence below the applicable Guidelines range if it were determined that Campo cooperated fully and provided substantial assistance to law-enforcement authorities.

On December 27, 1996, pursuant to Campo's cooperation agreement, the U.S. Attorney's Office for the Southern District of New York, which participated in the instant proceedings in the Eastern District, filed the 5K1.1 motion, detailing the cooperation and assistance provided by Campo. On that same day, the U.S. Attorney's Office for the Eastern District of New York submitted a letter to the court requesting that the court consider, in addition to the information set forth in the Southern District's 5K1.1 motion, Campo's earlier breach of his cooperation agreement, in determining an appropriate sentence.[2]

Campo was sentenced on January 6, 1997, along with codefendants Barber and Malavet. The government filed 5K1.1 motions on behalf of all three defendants, but none of the motions recommended a specific below-Guidelines sentence to the district court. When counsel for Barber, who was sentenced first, referred to the 5K1.1 motion, Judge Platt stated:

> The 5K letters are meaningless because the government refuses to make any recommendations. And I have told the government this and I have said it for the last 20 years in this court that until the government writes a meaningful 5K1 letter, I just have no obligation in this court to do anything about it.

Upon objection by Barber's counsel that it would be unfair to defendants to refuse to impose a below-Guidelines sentence based on the government's failure to recommend a specific sentence, Judge Platt responded:

I think it's unfair, too, but I am not the government. And the government has been taking this unfair position for twenty-two and a half years, as long as I have been on the bench. When I was a prosecutor 40 years ago, we stood up before a judge and said this man deserves this because he's done thus and so. Or this man has done nothing and he deserves that. There is not a man or woman in the prosecutor's office who has the guts to do it today.... They first used to tell me it · was a departmental policy. I went down and talked to the department and they said there is no such policy. What am I supposed to do?

The court asked counsel for the government whether she wished to respond. She explained that Barber and Malavet were less culpable than Campo, but confirmed that she was "constrained by the policies of the U.S. Attorney's Office for the Eastern District of New York not to make a specific sentenc[ing] recommendation." The court continued to press for a specific recommendation, and warned that "you know what is going to happen unless you answer." Counsel reiterated the office policy, but relented a bit by stating that the only statement she could make was that the government did not oppose Barber and Malavet's requests for a probationary sentence. The court thereafter granted the government's 5K1.1 motions on behalf of Barber and Malavet, and sentenced them both principally to five years' probation, including six months in either a halfway house or home confinement. The government made no specific representations with respect to Campo; the Southern District AUSA merely requested that the court take its 5K1.1 letter into account as it deemed appropriate.

The court sentenced Campo principally to a term of six years' imprisonment on each of the first seven counts of the indictment (for bank fraud, bank bribery, and money laun-

---

1. Although the activity related to the narcotics offense took place in the Southern District, Campo agreed to waive venue objections and to be prosecuted in the Eastern District.

2. When it was later suggested by the district court that the Eastern District's letter might be construed as having effectively withdrawn the Eastern District's support of the 5K1.1 motion, the Assistant United States Attorney ("AUSA") handling the case for the Eastern District represented that this was not its intention.

dering), five years on count eight (for making false statements in a matter within the jurisdiction of the FBI), and five years on the information (for aiding and abetting the distribution of cocaine), with all terms to be served concurrently and to be followed by five years of supervised release.

The day after sentencing, the government made an application, pursuant to Fed. R.Crim. P. 35(c),[3] for Campo to be resentenced due to the court's failure to apprise Campo of his right to appeal his sentence, as required by Fed.R.Crim.P. 32(c)(5).[4] During the conference scheduled by the court to discuss this application, on January 9, 1997, Campo's counsel raised his concern that Campo had been deprived of the benefit of the 5K1.1 motion because, in the absence of a specific sentencing recommendation from the government, "you were not going to downwardly depart from the guideline[s] range"— a characterization with which Judge Platt agreed, stating that he had made this "abundantly clear." Campo now appeals the district court's sentence.

## II.

It is well established that we may review a district court's refusal to downwardly depart only where the defendant's sentence "was imposed in violation of law ... [or] as a result of an incorrect application of the sentencing guidelines." 18 U.S.C. § 3742(a)(1), (2); *see, e.g., United States v. Lawal,* 17 F.3d 560, 562 (2d Cir.1994).

■ The government concedes that if the district court refused even to consider the government's 5K1.1 motion because of the prosecutors' refusal to recommend a specific sentence, this case would fall within the limited category of refusals to depart that are reviewable on appeal. *See* Gov't Br. at 17–18. The government also concedes that there is evidence in the record from which one could conclude that the district court refused to consider the motion on the merits,

although it argues that there is other evidence supporting a contrary conclusion. *See id.* at 18–20. Accordingly, the government asks that we remand the case to Judge Platt for "clarification" as to whether he considered (and denied) the 5K1.1 motion on the merits, or whether he simply refused to entertain it at all, based on the government's failure to recommend a specific sentence. *Id.* at 20.

We do not believe that a remand of this case for purposes of "clarification" is necessary or appropriate. Although there are isolated portions of the record that might be cited in support of the proposition that the court did in fact consider the motion and simply refused to grant it, we are persuaded that the court—in its own words—made it "abundantly clear" that it would not even consider the 5K1.1 motion in the absence of a specific sentencing recommendation.

■ Having determined that the district court was sufficiently clear that it would not entertain the government's motion where the government failed to recommend a specific below-Guidelines sentence, we are also convinced that this decision is reviewable, as the government concedes. Although § 5K1.1 leaves to the district court's discretion the decision whether to grant the government's substantial assistance motion, we find it unavoidable that a court must at least *exercise* its informed discretion when presented with a 5K1.1 motion, and that the court's express refusal to do so in this case resulted in a sentence "imposed in violation of law," 18 U.S.C. § 3742(a)(1). Just as a court's failure to appreciate its authority to depart constitutes an error of law appealable under § 3742(a)(1), *see, e.g., United States v. Adeniyi,* 912 F.2d 615, 619 (2d Cir.1990), it is likewise legal error for a court to take the unusual step of expressly abdicating the discretion that it has been duly entrusted by

3. Fed.R.Crim.P. 35(c) provides: "**Correction of Sentence by Sentencing Court.** The court, acting within 7 days after the imposition of sentence, may correct a sentence that was imposed as a result of arithmetical, technical, or other clear error."

4. Fed.R.Crim.P. 32(c)(5) provides, in pertinent part: "After imposing sentence in any case, the court must advise the defendant of any right to appeal the sentence."

law to exercise.[5] In the unusual circumstances with which we are presented, as in the situation where a court fails to recognize its authority to depart, our task is not to question the merits of a court's discretionary judgment about the propriety of departure, but simply to ensure that the court actually makes the discretionary judgment that the law allows and expects it to make. *Cf. United States v. Gangi*, 45 F.3d 28, 32 (2d Cir. 1995) (holding that defendant must have opportunity to respond to government's substantial assistance motion because that response is essential predicate to exercise of court's discretion, and distinguishing cases holding denials of 5K1.1 motions unreviewable because those cases concerned underlying merits of courts' discretionary judgments, not their very exercise); *United States v. Poff*, 926 F.2d 588, 590–91 (7th Cir.1991) (en banc) (explaining that difference between court's failure to appreciate its authority to depart, which is reviewable, and court's considered decision not to depart, which is unreviewable, is that only the latter "reflects an exercise of the judge's discretion").

We emphasize that in the ordinary case we assume that the court has exercised its informed discretion in considering a 5K1.1 motion, and do not require the court affirmatively to indicate on the record that it has done so. *Cf. United States v. Brown*, 98 F.3d 690, 694 (2d Cir.1996) (per curiam) ("We do not require that district judges by robotic incantations state 'for the record' or otherwise that they are aware of this or that arguable authority to depart but that they have consciously elected not to exercise it.").

Indeed, we have held that a court's failure to state its reasons for refusing to downwardly depart, or for refusing to downwardly depart more extensively than it did, is not appealable. *See Lawal*, 17 F.3d at 563. We also reiterate that we may not review the merits of a court's decision not to downwardly depart, or probe the sufficiency of its consideration, so long as the sentence imposed is not otherwise a violation of law or a misapplication of the Guidelines. We simply hold that, in this unusual case where a judge has expressly indicated his refusal to exercise the discretion accorded him by law, this refusal constitutes an error of law appealable under 18 U.S.C. § 3742(a)(1).

■ Accordingly, we vacate the judgment of the district court and remand the case for resentencing, including due consideration of the government's 5K1.1 motion. *See* 18 U.S.C. § 3742(f)(1). We also instruct the court that the failure of the U.S. Attorney's Office to recommend specific below-Guidelines sentences in future cases may not prevent the court from exercising its own informed discretion in considering 5K1.1 motions.

■ We will not, however, accede to defendant's request that we order the United States Attorney's Office to depart from office policy and recommend a specific sentence in this case. To do so would violate time-honored and fundamental principles of separation of powers. *Cf. United States v. Ming He*, 94 F.3d 782, 788–89 (2d Cir.1996) (subject to constitutional limitations, judges may not "interfere with the prosecutor's decision

---

5. Because § 5K1.1 must at a minimum anticipate that a motion by the government will at least be *considered* by a court in the exercise of its informed discretion, and because the court's refusal to consider such a motion conflicts with that mandate, the court's sentence might also be deemed "an incorrect application of the sentencing guidelines" reviewable under 18 U.S.C. § 3742(a)(2). Indeed, this is the section cited by the government in arguing that the sentence is subject to review if in fact the court refused to entertain the government's motion. *See* Gov't Br. at 17–18. In the related context where a court has failed to recognize its authority to depart, this Court and others have deemed § 3742(a)(1) (legal error) to be the relevant section, *see Adeniyi*, 912 F.2d at 619, but other

courts have deemed § 3742(a)(2) (misapplication of the Guidelines), or both, to be applicable, *see United States v. Romolo*, 937 F.2d 20, 22–23 (1st Cir.1991) (collecting cases). Inasmuch as this Court has applied § 3742(a)(1) in this related context, and has generally characterized § 3742(a)(2) as geared toward more technical or fact-based Guidelines errors, *see Adeniyi*, 912 F.2d at 619, we conclude that § 3742(a)(1) is the more appropriate basis for review in this case. Inasmuch as we hold that the court's sentence was "in violation of law" under § 3742(a)(1), it is ultimately of no moment whether it was also a misapplication of the Guidelines under § 3742(a)(2), and we therefore have no need to decide whether § 3742(a)(2) provides an alternative basis for review.

either to make or not to make a § 5K1.1 motion, as prosecutorial discretion is traditionally exclusive and absolute"). Campo has not shown that the government's failure to recommend a specific sentence was based on bad faith or impermissible considerations. *See id.* at 787 (defendant entitled to appellate relief where inadequacy of government's 5K1.1 motion, or refusal to file motion altogether, stems from governmental misconduct, bad faith, or unconstitutional or impermissible motives). Moreover, contrary to Campo's assertion, the government did not breach the 1996 plea agreement by failing to make a specific sentencing recommendation. The plea agreement required the government to file a 5K1.1 motion if Campo satisfied his end of the bargain, but in no way required it to recommend a specific sentence.[6]

## III.

◼ We further direct that, upon remand to the district court for resentencing, this case be reassigned to a different judge. Although we trust that on remand Judge Platt would fairly consider the government's motion on the merits, in determining whether to reassign a case we consider not only whether a judge could be expected to have difficulty putting aside his previously expressed views, but also "whether reassignment is advisable to preserve the appearance of justice." *United States v. Robin,* 553 F.2d 8, 10 (2d Cir.1977) (per curiam); *see, e.g., United States v. Londono,* 100 F.3d 236, 242 (2d Cir.1996). We believe that, in light of Judge Platt's firmly expressed position, the appearance of impartiality would best be preserved by reassignment of this case. Inasmuch as Campo pled guilty before trial and resentencing will not require extensive additional proceedings, reassignment will not "entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *Robin,* 553 F.2d at 10.

## IV.

For the foregoing reasons, the judgment of the district court is vacated and the case remanded for resentencing by a different district judge.

6. Indeed, the agreement stated that "[t]he Offices cannot and do not make a promise or representation as to what sentence will be imposed by the Court," and that "[n]o additional promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless memorialized in writing and signed by all parties."