**UNITED STATES of America,
Appellant,**

v.

**Richard C. VENTRILLA, Defendant–
Appellant.**

**Docket No. 00–1301.**

United States Court of Appeals,
Second Circuit.

Argued: Nov. 14, 2000.

Decided: Nov. 22, 2000.

John Humann, Federal Public Defender's Office, W.D.N.Y., for appellant.

Richard Power Maigret, Assistant United States Attorney, for Denise O'Donnell, United States Attorney, W.D.N.Y., for appellee.

Before: CARDAMONE, CALABRESI and KATZMANN, Circuit Judges.

PER CURIAM:

Appellant Richard Ventrilla appeals from a sentence imposed by the United States District Court for the Western District of New York (Elfvin, *J.*). Ventrilla contends that his sentence was "imposed in violation of law," 18 U.S.C. § 3742(a)(1), as a result of the district court's refusal to grant a downward departure for diminished mental capacity pursuant to U.S.S.G. § 5K2.13. We vacate and remand.

## BACKGROUND

In 1996 and 1997, appellant Richard Ventrilla ("Ventrilla") wrote eighteen anonymous letters to people he did not know. He threatened that if they did not pay him sums between $25,000 and $35,000 according to his instructions, the consequences would be "absolutely catastrophic." Ventrilla received no payments in response to his letters.

Ventrilla did receive attention from the United States government, however. On March 19, 1999, he pled guilty to a one-count information charging him with mailing a threatening communication with intent to extort money, in violation of 18 U.S.C. § 876. The plea agreement stipulated, pursuant to U.S.S.G. § 1B1.3, that the relevant conduct involved in the offense included 17 letters in addition to the one charged. The plea agreement also allowed Ventrilla to make a motion for a downward departure from the sentencing range on the ground of diminished capacity pursuant to U.S.S.G. § 5K2.13 ("A sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity."). The government reserved the right to oppose such a motion.

At sentencing, Ventrilla requested a diminished capacity downward departure, and the government opposed it. Ventrilla put on evidence that prior to late 1995 or early 1996, he had a stable family history and employment background, and no criminal record. He then underwent a change in personality and became depressed. Upon seeing a psychiatrist, Ventrilla discovered that he had a "large vascular lesion in the area of the internal capsule" (the "lesion," "infarct," or "stroke"). The psychiatrist concluded that the lesion caused Ventrilla's personality change and the resulting "bizarre behavior." Two other medical experts, hired by the defendant in conjunction with his criminal case, were less convinced of the causal connection. One testified that the stroke "could not

explain the behavior associated with [the defendant's] committing extortion." The other testified that although such behavior change is "not typically associated with" the type of neurological damage Ventrilla had suffered, "the temporal connection ... suggests such an association." The two medical experts hired by the government concluded that the infarct was not causally related to Ventrilla's criminal behavior.

This evidence was presented to the district court at sentencing. The court wondered why the defendant claimed diminished capacity when he had not invoked the affirmative defense of insanity to demonstrate an incapacity to have formulated the appropriate *mens rea*. It stated:

> "Despite the provisions of Section 5K2.13 of the sentencing guidelines, and the clear intimation therein that an individual's intention or lack of intention due to diminished mental capacity can be taken into consideration by the Court in imposing a sentence, its [sic] my firm belief that that's a misplaced qualification or differentiation. If any such is to come into play in my mind, it would have to enter into the mens rea as to whether the defendant had the intention to do what he did to—regardless of any knowledge of whether it was against the law, a matter which should clearly be for the jury. So having in mind the clear language of subsection 13 and listening to your presentation, Mr. Humann, well made, and to the documents which are in front of me, including the reports of the Doctors, I am not going to give it [5K2.13] any credence in my sentencing."

The district court then denied the motion and sentenced Ventrilla to 46 months imprisonment and two years supervised release. Ventrilla appeals the sentence.

## DISCUSSION

■ Normally, a district court's decision not to depart downward from the sentencing guidelines is within the court's discre-

tion and is unreviewable on appeal. *See United States v. Galvez–Falconi,* 174 F.3d 255, 257 (2d Cir.1999); *United States v. Montez–Gaviria,* 163 F.3d 697, 701 (2d Cir.1998). Moreover, circuit courts "may not ... probe the sufficiency of [the district court's] consideration" under most circumstances. *United States v. Campo,* 140 F.3d 415, 419 (2d Cir.1998).

■■■ Where a sentence has been " imposed in violation of law," 18 U.S.C. § 3742(a)(1), however, this court can review the refusal of a district court to depart downward. The question in this case is whether the district court's remarks regarding Ventrilla's motion for a downward departure on the basis of diminished capacity indicate such a violation of law. We believe that they do.

The court's remarks may mean one of two things, either of which requires that we vacate Ventrilla's sentence. First, the district court may have simply refused to exercise discretion with regard to Ventrilla's motion. If that is the case, then *Campo* controls here. In *Campo,* the U.S. Attorney's office for the Eastern District refused to make specific downward departure recommendations for substantial assistance pursuant to U.S.S.G. § 5K1.1 The district court stated that it would not consider downward departures for substantial assistance without such a recommendation. This court held that it was "legal error for a court to take the unusual step of expressly abdicating the discretion that it has been duly entrusted by law to exercise." 140 F.3d at 418–19. We must "ensure that the [district] court actually makes the discretionary judgment that the law allows and expects it to make." *Id.* at 419. Although the government had pointed to "isolated portions of the record that might be cited in support of the proposition that the court did in fact consider the motion and simply refused to grant it," this court vacated and remanded because it was "abundantly clear" that the district court had not considered the merits of the motion. *Id.* at 418.

In sentencing Ventrilla, the district court stated that it "ha[d] trouble with that subsection," and that, the guidelines notwithstanding, it held a "firm belief" that a downward departure for diminished capacity is "a misplaced qualification or differentiation." The court's cursory statement that it had considered the medical records constitutes the kind of "isolated portion[ ] of the record" that fails to overcome its obvious refusal to exercise discretion.

■ Alternatively, it is possible that the district court mistakenly believed that it did not have the authority to grant a downward departure on the basis of diminished capacity. Its statement suggests that it thought of diminished capacity as a question of *mens rea* for the jury to decide at trial, most likely in the form of an insanity defense, rather than a question for the court at sentencing. But that is incorrect. As the government concedes, the elements and standards of proof for an insanity defense and diminished capacity are different. In addition, who decides the issue, judge or jury, differs for each claim. A defendant must persuade a jury by clear and convincing evidence that he "was unable to appreciate the nature and quality or the wrongfulness of his acts" in order to prevail on an insanity defense. 18 U.S.C. § 17(a). To establish diminished capacity, on the other hand, a defendant need only persuade a judge by a preponderance of the evidence that he suffers from "reduced mental capacity" and that a "causal link [exists] between that reduced capacity and the commission of the charged offense." *United States v. Prescott,* 920 F.2d 139, 146 (2d Cir.1990); U.S.S.G. § 5K2.13.

■] We have made clear in the past that a sentence is imposed in violation of law when "the judge's sentencing remarks create ambiguity as to whether the judge correctly understood an available option." *United States v. Thorpe,* 191 F.3d 339, 342 (2d Cir.1999) (citation and quotation marks omitted). If a district court is under the "mistaken belief that it lacked the power

to make a downward departure, ... we must remand to the district court to determine whether it understood the full scope of its authority." *Id.* at 342–43 (citing *United States v. Ogbondah,* 16 F.3d 498, 501 (2d Cir.1994)); *see also United States v. Ekhator,* 17 F.3d 53, 55 (2d Cir.1994) ("[I]f we are unable to discern whether the district court's refusal to depart resulted from the exercise of its discretion or instead from a perceived, but mistaken, lack of authority, we remand to the district court for resentencing."). Because the district court's remarks in the instant case indicate that its view of the law was "erroneous at worst and ambiguous at best," *Thorpe,* 191 F.3d at 342, Ventrilla's sentence cannot stand.

## CONCLUSION

In imposing sentence on Ventrilla, the district court either refused to exercise its discretion or believed it lacked authority to exercise such discretion. Either way, under 18 U.S.C. § 3742(a)(1), Ventrilla's sentence was imposed in violation of law. Accordingly, we VACATE AND REMAND to the district court for resentencing.