UNITED STATES of America,
Appellee,

v.

Eusebio MENDOZA, Defendant–
Appellant.

No. 00–1332.

United States Court of Appeals,
Second Circuit.

Feb. 21, 2001.

Jay K. Musoff, Assistant United States Attorney; James J. Benjamin, Jr., and Robin E. Abrams, Assistant United States Attorneys, on the brief, for Mary Jo White, United States Attorney, S.D.N.Y., for appellee.

Lloyd Epstein, Epstein & Weil, New York, NY, for appellant.

Present Van GRAAFEILAND, CALABRESI, and SOTOMAYOR, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, it is ORDERED, ADJUDGED, AND DE-CREED that the judgment of the district court be and hereby is AFFIRMED IN PART and VACATED and REMANDED IN PART.

Appellant Eusebio Mendoza ("Mendo-za") appeals from a judgment of conviction in the United States District Court for the Southern District of New York (Kram, *J.*). Following a guilty plea to four counts of wire and mail fraud in violation of 18 U.S.C. §§ 1343 and 1341, Mendoza was sentenced to thirty months imprisonment, five years supervised release, $370,000 in restitution, and $400 in special assess-ments. He appeals his sentence.

## BACKGROUND

In December 1995, Mendoza fraudulent-ly obtained funds from Diversified Invest-ment Advisors Inc. ("Diversified"), an in-vestment firm in New York. Posing as Adel Abadir, Mendoza mailed a loan agree-ment and a withdrawal form to Diversified. He instructed Diversified to wire a total of $450,000 ($50,000 as a loan and $400,000 as a withdrawal) to Mendoza's own account at NatWest Bank in New Jersey. Diversi-fied withheld $80,000 for taxes on the with-drawal and wired Mendoza the remaining $370,000. Following the wire transfers, Mendoza gradually withdrew the $370,000 from his NatWest bank account, and, in January 1996, closed that account.

Thereafter, in a separate case, Mendoza pleaded guilty, in the United States Dis-trict Court for the District of New Jersey, to two counts of bank fraud stemming in part from his diversion of $360,424 from a Fleet Bank account also owned by Abadir. On April 29, 1999, the district court sen-tenced Mendoza to forty months imprison-

ment, three years supervised release, $119,500 in restitution, and $200 in special assessments.

## I.

On September 3, 1999, Mendoza pleaded guilty in the instant case before a magistrate judge. In a letter brief to the district court prior to sentencing, Mendoza moved for a downward departure based on his health and the conditions of his pretrial confinement. He contended that those conditions had been made unduly harsh as a result of the loss, by the Bureau of Prisons ("BOP") during a prison transfer, of his hearing aid and artificial eye. Mendoza claims that the BOP had been slow to provide him with new prosthetic devices and did not act until the district court made inquiries into the problem. Such "[e]xtraordinarily oppressive prison conditions," in "pre-sentence, as well as post-sentence conditions of confinement," he argued, "form a recognized basis for a downward departure."

The Government replied that Mendoza had received extensive medical treatment. In particular, the BOP provided him with a new artificial eye and, when he complained that it did not fit (although a doctor could find no problem with it), began the process of obtaining another replacement. In addition, the examining audiologist tried to determine whether a hearing aid was the most effective way to address Mendoza's hearing problems or whether surgical interventions would be more effective. The Government thus argued that no departure was warranted.

At sentencing on May 3, 2000, Mendoza reiterated his request for a downward departure. The parties presented the merits of their arguments. The district court noted that Mendoza had received medical attention and was continuing to receive such attention. It stated, "[Y]ou are making a legal argument which I don't think is valid." It concluded that the BOP's treatment of Mendoza "doesn't warrant any downward departure" and declined to grant one.

## II.

Mendoza also objected to the Pre–Sentence Report's ("PSR") calculation of the total loss at $810,000. This amount included as relevant conduct the $360,424 from the New Jersey case as well as the $450,000 he obtained from Diversified. Accordingly, the PSR recommended an eleven-level upward adjustment, pursuant to U.S.S.G. § 2F1.1(b)(1)(L), because the loss was between $800,000 and $1.5 million. Mendoza offered two arguments for a ten-level adjustment, which would apply if the proper calculation of loss was under $800,000.

First, Mendoza claimed that the calculation of loss in the New Jersey case resulted from double-counting. He had previously presented this argument to the New Jersey district court, which had rejected it, and he was pursuing it on appeal to the Third Circuit. He requested either a hearing on the matter before the New York district court or an adjournment until the Third Circuit decided the issue. Prior to sentencing, however, the Government provided Mendoza with bank records establishing that $360,424 was the correct determination of loss. Mendoza then conceded that amount.

Second, with regard to the loss amount in the instant case, Mendoza contested the inclusion of the $80,000 withheld for taxes from the Diversified withdrawal. He claimed that, being "a person of some financial sophistication," he knew that $80,000 would be withheld for taxes and accordingly intended to withdraw only $320,000, not $400,000, from the Diversi-

fied account. The Government responded that the victim actually suffered a $400,000 loss as a result of the withdrawal request, and that such amount was therefore the true loss. The district court found Mendoza's argument "unpersuasive" and concluded that $450,000 (the full $400,000 plus the $50,000 loan) was the correct calculation of loss in the instant case.

## III.

Having rejected both Mendoza's request for a downward departure and his alternative loss calculations, the district court set the total offense level at sixteen and found a criminal history category of VI. The resulting sentencing range was 46–57 months imprisonment. Because the loss calculation included the New Jersey fraud, the sentence was made concurrent with the sentence imposed in the New Jersey case. Accordingly, the court sentenced Mendoza to 30 months imprisonment in addition to the 27 months already served, for a total of 57 months. It also imposed five years of supervised release.

Mendoza appeals the sentence. Through counsel, he contends that (1) the district court mistakenly believed that it did not have the authority to grant a downward departure on the basis of extraordinarily harsh pre-trial confinement; and (2) the imposition of a five-year term of supervised release exceeded the three-year maximum for a class D felony. In addition, acting *pro se*, Mendoza argues that (3) the computation of loss in both New Jersey and New York was incorrect.

## DISCUSSION

■■■ Mendoza's first claim is that the district court thought it lacked authority to grant a downward departure on the basis

of unduly harsh pre-trial conditions of confinement. A district court's decision not to depart downward from the sentencing guidelines is generally within the court's discretion and is unreviewable on appeal. *See, e.g, United States v. Galvez–Falconi,* 174 F.3d 255, 257 (2d Cir.1999); *United States v.. Montez–Gaviria,* 163 F.3d 697, 701 (2d Cir.1998). Moreover, circuit courts "may not ... probe the sufficiency of [the district court's] consideration" under most circumstances. *United States v. Campo,* 140 F.3d 415, 419 (2d Cir.1998) (*per curiam*). Where the record reflects that the court was not aware of its authority to depart, however, the sentence is amenable to review. *United States v. Ekhator,* 17 F.3d 53, 55 (2d Cir.1994).

The record in this case contains no indication that the district court believed it lacked the requisite authority.[1] The single statement upon which Mendoza bases his argument—that counsel was "making a legal argument which I don't think is valid"—is taken out of context and is insufficient to demonstrate such a perceived lack of authority. Indeed, the conditions of Mendoza's confinement, and the status of the BOP's progress toward replacing his prostheses, were discussed at length before the district court. In light of such discussion, and the presumption that the court understands its authority to depart unless the record reflects otherwise, *see United States v. Thorpe,* 191 F.3d 339, 342 (2d Cir.1999), we cannot review the court's denial of the downward departure request.

■■■ Mendoza's second claim, that the five-year term of supervised release imposed by the district court exceeds the three-year statutory maximum applicable in this case, is correct and requires resentencing. Mendoza was convicted of two

---

1. The Government did not argue, either in its letter brief to the trial court or at sentencing, that the court lacked authority. Rather, it argued the merits of the departure.

counts of violating 18 U.S.C. § 1343 and two counts of violating 18 U.S.C. § 1341. Unless the offense affected a "financial institution" within the meaning of 18 U.S.C. § 20, then these statutes are Class D felonies, *see* 18 U.S.C. § 3559, carrying a maximum supervised release term of three years. *See* 18 U.S.C. § 3583(b)(2); 18 U.S.C. § 3624(e) (requiring multiple terms of supervised release in the same case to run concurrently). Mendoza claims, and the Government concedes, that Diversified does not qualify as a "financial institution" and, therefore, that the five-year term exceeds the three-year maximum. We agree and vacate and remand for resentencing so that the supervised release term conforms to the statutory maximum.

■ In addition to the above arguments offered by his counsel, Mendoza contends, *pro se*, that the district court's finding of loss is incorrect as to the amount at issue in the related New Jersey case and in the instant one. However, Mendoza waived any appeal when he conceded, prior to sentencing, that the $360,424 amount was correct and subsequently declined to argue otherwise before the district court at sentencing. The "intentional relinquishment or abandonment of a known right" is not appealable. *United States v. Olano*, 507 U.S. 725, 733–34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Moreover, objections to the factual findings of a PSR not raised at sentencing are waived. *See United States v. Caba*, 955 F.2d 182, 187 (2d Cir.1992).

■ But, regardless of waiver, Mendoza contends that the district court's calculation of loss in the instant case was incorrect for another reason, namely that he *intended* to withdraw $320,000 rather than $400,000 from Diversified. Mendoza argues that the district court should have calculated the intended loss, which he claims was the withdrawal minus the taxes, rather than the "potential" and "actual" loss of $400,000. But the guidelines make clear that " 'loss' means the value of the property taken," not, ordinarily, the gain to the defendant, U.S.S.G. § 2B1.1, cmt. n. 2, nor the intended loss, unless the intended loss *"is greater than the actual loss."* U.S.S.G. § 2F1.1 cmt. n. 8 (emphasis added). Here, Mendoza's suggested intended loss is considerably *less* than the actual loss, which the court, not incorrectly, found to be $400,000. As a result, Mendoza's knowledge that taxes would be withheld does not undermine the validity of the district court's findings.[2] Accordingly, the full $400,000 constitutes loss under the guidelines in the instant case. And, together with the $50,000 loan, the total loss in the two cases was over $800,000. Accordingly, we uphold the district court's sentence in this respect.[3]

## CONCLUSION

We have considered all of Mendoza's arguments and, with the exception of his challenge to the term of supervised release, find them to be without merit. We therefore VACATE the judgment of the district court and REMAND to that court for resentencing solely with respect to the

---

2. In his brief, Mendoza seeks to rely on cases suggesting that potential loss should be excluded as a basis for sentencing. But these cases exclude a potential loss figure in favor of a different actual loss figure, not in favor of a different—and lower—intended loss figure, as Mendoza urges us to do here.

3. The fact that the $80,000 withheld for taxes has been recovered also has no bearing on the calculation of loss. *See, e.g., United States v. Carrozzella*, 105 F.3d 796, 805 (2d Cir.1997) (collecting cases) (holding that "loss in fraud cases includes the amount of property taken, even if all or part has been returned").

term of supervised release, and we AF-FIRM the sentence in all other respects.