09-1421-cr
United States of America v. Hernandez

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2009

(Argued: April 13, 2010                    Decided: May 5, 2010)

Docket No. 09-1421-cr

- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

                    Appellee,

          - v.-

HECTOR HERNANDEZ, also known as MENUDO,

                    Defendant-Appellant.

- - - - - - - - - - - - - - - - - - -x

          Before:          JACOBS, Chief Judge, KEARSE and
                           CALABRESI, Circuit Judges.

          Defendant-appellant Hector Hernandez appeals from a judgment entered in the United States District Court for the Eastern District of New York (Platt, J.) in 2009, which re-imposed a 405-month sentence of incarceration after remand from this Court back in 1993. The record indicates that the district court evidently started with an assumption--invalid after so long an interval--that the baseline for the re-

sentencing was the sentence imposed in 1991, and thereby failed to properly consider the factors set out in 18 U.S.C. § 3553(a)--particularly Hernandez's submission of evidence of rehabilitation--at the time of re-sentencing. Accordingly, we vacate and remand for re-sentencing before a different district court judge.

MICHAEL A. YOUNG (Joyce C. London, on the brief), New York, NY, for Appellant.

JOHN J. DURHAM, Assistant United States Attorney (Peter A. Norling, Assistant United States Attorney, on the brief), for United States Attorney Benton J. Campbell, United States Attorney's Office for the Eastern District of New York, Brooklyn, NY, for Appellee.

DENNIS JACOBS, Chief Judge:

Defendant-appellant Hector Hernandez appeals from a judgment entered in the United States District Court for the Eastern District of New York (Platt, J.) in 2009, which re-imposed a 405-month sentence of incarceration after remand from this Court back in 1993. The record indicates that the district court evidently started with an assumption--invalid after so long an interval--that the baseline for the re-sentencing was the sentence imposed in 1991, and thereby

2

failed to properly consider the factors set out in 18 U.S.C. § 3553(a)--particularly Hernandez's submission of evidence of rehabilitation--at the time of re-sentencing. Accordingly, we vacate and remand for re-sentencing before a different district court judge.

<strong>I</strong>

In 1989, Hernandez was arrested in connection with the take-down of a large New York City heroin and cocaine trafficking organization doing business as the "Unknown Organization."  As described in this Court's opinion in United States v. Rosa, 11 F.3d 315, 324 (2d Cir. 1993), the Unknown Organization "consisted of a highly structured distribution network that purchased relatively pure narcotics, diluted them, packaged them in glassine envelopes at locations known as 'mills,' and sold them through 24-hour street sales locations known as 'spots.'"

Following severance, Judge Spatt presided over a trial of several defendants and Judge Platt presided over a trial of the remaining defendants, including Hernandez.  On June 7, 1991, following a jury trial, Hernandez was convicted of four counts:

- **Count 1** – Conspiracy to distribute and possession with intent to distribute in excess of 1 kilogram of heroin

and in excess of 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(a).

- **Count 2** - Conspiracy to kidnap and assault with a deadly weapon, in violation of then-18 U.S.C. § 1952B, arising from the kidnaping and torture of Pedro Hernandez.

- **Count 16** - Conspiracy to commit murder, in violation of then-18 U.S.C. § 1959A, arising from the murder of Walter Hambrick.

- **Count 17** - Use of a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1).

On December 20, 1991, the district court sentenced Hernandez to 405 months of incarceration, five years of supervised release, a $250,000 fine, and a $200 special assessment.

Hernandez appealed his convictions on multiple grounds, as well as his sentence on the grounds that the district court (i) erred in calculating the quantity of narcotics attributable to him, and (ii) applied a four-level enhancement for his leadership role without making the requisite findings. This Court rejected all of Hernandez's challenges except for his second sentencing argument. In an opinion dated December 3, 1993, this Court vacated Hernandez's sentence and remanded for fact-finding on that issue:

> The presentence report ("PSR") prepared on Hernandez recommended a four-step increase in his

4

> offense level pursuant to Guidelines § 3B1.1(a) for his leadership role in the offense. Hernandez objected to this characterization. The court made no finding with respect to his role. Accordingly, we vacate Hernandez's sentence and remand for a factual finding on that issue.

Rosa, 11 F.3d at 344; see also id. at 345 ("The sentences of Rodriguez and Hernandez are vacated and the matters are remanded for findings as to their roles in the offense.").
On January 28, 1994, the mandate issued.

In 1997, the district court resolved a question as to Hernandez's representation, granting the government's application to appoint counsel. However, no progress was made toward re-sentencing between the 1997 appointment of new counsel and the filing of a letter by Hernandez's mother in 2008, expressing bewilderment. That letter set the case in motion after a fifteen-year dormancy following this Court's remand.

On August 1, 2008, the district court held a conference, attended only by the government. Judge Platt expressed his view that the single issue presented on remand--the need for factual findings in support of the four-level enhancement for Hernandez's leadership role--was sufficiently answered in the Circuit Court's Rosa opinion itself: "[Judge Kearse] did it right there in her own

5

opinion, answered the question she said I didn't answer."

In December 2008, Hernandez filed a sentencing memorandum seeking a sentence lower than 405 months.[1] The government's opposition urged the district court to re-impose a 405-month sentence.

At the outset of the sentencing hearing on March 27, 2009, the district court distributed a written memorandum and order primarily addressing the single issue posed by this Court's remand: factual findings bearing on the four-level role enhancement. The written memorandum and order did not discuss evidence of Hernandez's rehabilitation. The district court permitted the parties to review the order, heard argument on Hernandez's role and other issues, and decided to "reimpose the same sentence." Notwithstanding defense counsel's arguments, the district court never expressly reacted to evidence of Hernandez's rehabilitation or other proposed mitigating factors.

On April 9, 2009, the district court entered an amended judgment sentencing Hernandez to 405 months of

---

[1] Hernandez's sentencing memorandum also sought to reduce the $250,000 fine imposed at the 1991 sentencing to the amount Hernandez had by then paid. The 2009 amended judgment granted that relief and it is not an issue on this appeal.

incarceration, five years of supervised release, no fine, and a $200 special assessment.  In its April 9, 2009 Statement of Reasons, filed under seal with this Court, the district court justified the re-imposition of the 405-month sentence as follows:

> The action was remanded from the United States Court of Appeals for the sole purpose of placing findings as to the defendant's role in the offenses and that this Court did not set forth a sufficient basis for applying a four level enhancement of his leadership role in the conspiracy.  The Court addressed these issues, in depth, by written order dated March 27, 2009.  The Court provided the parties a copy at the time of the re-sentence and gave the parties ample time to read and discuss the order prior to addressing the Court.
>
> The Court considered all the filings in this case and the factors in 18:3553(a) and vividly recalls the chilling testimony and facts of this case.[2]  Although the Court was not required to hear

---

[2] The district court referenced 18 U.S.C. § 3553(a), which provides the factors to be considered in imposing sentence:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider-
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed-

7

argument regarding a full re-sentence outside of the Court of Appeals Mandate, the Court entertained the motions presented in defendant's sentencing memorandum.  All those arguments were denied.  The Court did reduce the fine amount to what the defendant already contributed with the Government's consent.

Hernandez timely appealed.

## II

---

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentences and the sentencing range established for-(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement . . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

8

Hernandez principally challenges the procedural and substantive reasonableness of his 2009 re-sentencing.  We review the reasonableness of a district court's sentence under a deferential abuse of discretion standard:

> [A]ppellate courts play an important but clearly secondary role in the process of determining an appropriate sentence.  We review the work of district courts under a "deferential abuse-of-discretion standard."  This form of appellate scrutiny encompasses two components: procedural review and substantive review.
>
> As to substance, we will not substitute our own judgment for the district court's on the question of what is sufficient to meet the § 3553(a) considerations in any particular case.  We will instead set aside a district court's *substantive* determination only in exceptional cases where the trial court's decision "cannot be located within the range of permissible decisions."  To the extent that our prior cases may be read to imply a more searching form of substantive review, we today depart from that understanding.
>
> This degree of deference is only warranted, however, once we are satisfied that the district court complied with the Sentencing Reform Act's *procedural* requirements, and this requires that we be confident that the sentence resulted from the district court's considered judgment as to what was necessary to address the various, often conflicting, purposes of sentencing.
>
> A district court commits procedural error where it fails to calculate the Guidelines range (unless omission of the calculation is justified), makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory.  It also errs procedurally if it does not consider the § 3553(a)

9

factors, or rests its sentence on a clearly erroneous finding of fact. Moreover, a district court errs if it fails adequately to explain its chosen sentence, and must include "an explanation for any deviation from the Guidelines range." Where we find significant procedural error, one proper course would be to remand to the district court so that it can either explain what it was trying to do, or correct its mistake and exercise its discretion anew, rather than for the appellate court to proceed to review the sentence for substantive reasonableness.

United States v. Cavera, 550 F.3d 180, 189-90 (2d Cir. 2008) (in banc) (internal citations and footnotes omitted).

**III**

Against this backdrop, we conclude that the district court procedurally erred in failing to consider how intervening developments--in particular, Hernandez's rehabilitation--affected the Section 3553(a) analysis.[3]

At his 2009 re-sentencing, Hernandez offered (in mitigation) evidence that during the fifteen-year interval he succeeded at numerous vocational and educational efforts, including earning an Associate in Specialized Business degree with honors for completion of the Business Management curriculum at the Center for Degree Studies, and a diploma

---

[3] Because we vacate the 2009 re-sentencing and remand for a third sentencing proceeding based on this procedural error, we need not reach Hernandez's other arguments on this appeal.

10

for completion of the Professional Financial Planning Specialist Program at the School of Financial Planning. Hernandez also tutored other inmates and received positive performance reports for work in a variety of prison jobs. There is no evidence in the record of any misconduct during Hernandez's incarceration.

If credited, the mitigating evidence could affect the weight given to considerations that were discounted in 1991 by the gravity of Hernandez's crime: his difficult childhood, his youth at the time of the offense conduct (he was 22 years old when he was arrested), and his addiction to drugs at the time of the offense conduct. At the time of the 2009 re-sentencing Hernandez was 42 years old, a development that, though predictable by arithmetic, may (if considered in the context of Hernandez's intervening history) indicate a decreased likelihood of recidivism. None of this was weighed in the balance of the Section 3553(a) factors.

True, Judge Platt twice recited during the re-sentencing proceedings that he considered all of the Section 3553(a) factors: at the March 27, 2009 sentencing hearing, Judge Platt stated "I have definitely reconsidered the

11

3553(a) factors," and the district court's Statement of Reasons explained that "[t]he Court considered all the filings in this case and the factors in 18:3553(a) and vividly recalls the chilling testimony and facts of this case." Such statements by the district court reinforce the presumption "that [the] sentencing judge has faithfully discharged her duty to consider the statutory factors," with a caveat, however: "in the absence of record evidence suggesting otherwise." United States v. Fernandez, 443 F.3d 19, 30 (2d Cir. 2006); see also id. ("[W]e will not conclude that a district judge shirked her obligation to consider the § 3553(a) factors *simply because* she did not discuss each one individually or did not expressly parse or address every argument relating to those factors that the defendant advanced." (emphasis added)). In this case, "record evidence suggest[s] otherwise" for several related reasons. Id.

Judge Platt misconstrued the scope of re-sentencing. His initial comments at the August 1, 2008 conference with the government reflect an understanding that he might obviate the need for factual findings to support the four-level role enhancement, and thus discharge the burden of re-

sentencing.  Judge Platt opined that "I suppose I could put the burden on [Chief Judge] Dearie to persuade [Chief Judge] Jacobs to persuade [Judge Kearse that] she has already given the answer."

Moreover, the court's March 27, 2009 written memorandum and order focused almost exclusively on making the factual findings required by this Court's 1993 opinion.  The Statement of Reasons observed that "the Court was not required to hear argument regarding a full re-sentence outside of the Court of Appeals Mandate."  In the alternative, the district court perfunctorily denied those arguments it deemed outside the limited scope of re-sentencing.  This limitation was procedural error in a re-sentencing so long delayed.  The original sentence had been vacated; accordingly, the district court was required to re-sentence Hernandez.  Although there is a "presumption that resentencing would be limited, not de novo," that presumption yields if the defendant can "show that (1) the 'spirit of the mandate' requires de novo resentencing, (2) an issue became relevant only after the initial appellate review, or (3) there is a 'cogent' or 'compelling' reason for resentencing de novo, such as a change in controlling

13

law." United States v. Rigas, 583 F.3d 108, 118 (2d Cir. 2009). During the fifteen-year hiatus in this case, the law of sentencing substantially evolved, and Hernandez may have undergone a remarkable rehabilitation. The district court thus was obligated to re-sentence Hernandez de novo, consistent with the wider principle that "the district court [i]s required to resentence [a defendant] in light of the circumstances as they st[an]d at the time of his resentencing." Werber v. United States, 149 F.3d 172, 178 (2d Cir. 1998).

Judge Platt re-imposed the same 405-month sentence originally imposed in 1991 notwithstanding evidence of rehabilitation that was neither credited nor discredited. Instead it was offset by Judge Platt's repeated emphasis on the seriousness of the offense conduct. This finding was of course available--and made--in 1991. Heightened emphasis on the nature of the crime at re-sentencing was said to be justified (in the March 27, 2009 written memorandum and order as well as at the sentencing hearing) by the absence of Guidelines for second-degree murder at the time of the 1991 sentencing and the development of such Guidelines in the interval.

A district court judge is required to consider the seriousness of the offense. However, mechanisms were available for that purpose at the time of the 1991 sentencing. As the government pointed out at the March 27, 2009 sentencing hearing, the original presentence report included an increase for murder--perhaps insufficient, but an increase nevertheless--which the district court adopted. And, as Hernandez's counsel argued at that hearing, "an upward departure provision" was available at the time of the 1991 sentencing if the district court believed that the Guidelines sentence failed to capture the severity of the offense conduct.

Moreover, Judge Platt's reliance on the promulgation of a Guidelines provision is misplaced. The adoption of such a provision in no way altered the gravity of Hernandez's offense conduct. That is one of the Section 3553(a) factors that did not change since 1991.

Irrespective of the weight Judge Platt attributed to the severity of the offense, he overlooked the mitigating evidence presented in Hernandez's sentencing submissions and at the March 27, 2009 sentencing hearing. At that hearing, Judge Platt remarked: "I don't think I *could change his*

15

*sentence* given there's no new factor here." But as Hernandez forcefully argued, there were new factors presented to Judge Platt--including evidence of Hernandez's rehabilitation and his age at the time of re-sentencing--as well as other mitigating considerations that were discounted in 1991 by the gravity of Hernandez's crime--including his difficult childhood and his youth at the time of the offense conduct. The root error--implicit in the judge's framing of the issue as whether he "could change [the] sentence"--is that the baseline at re-sentencing was the 405-month sentence imposed eighteen years earlier.

Considered together, these features of the record indicate that Judge Platt failed to consider the Section 3553(a) factors. Specifically, Judge Platt failed to consider evidence of rehabilitation and other mitigating evidence.[4] This procedural error requires vacatur of the 2009 re-sentencing and remand for a third sentencing

---

[4] Even assuming that Judge Platt did consider the Section 3553(a) factors, the foregoing discussion makes clear that he then failed to adequately explain his chosen sentence as required by 18 U.S.C. § 3553(c). See Cavera, 550 F.3d at 190, 192-93. This alternative procedural error is manifested by the re-imposition of the 405-month sentence without any explanation for the discounting of Hernandez's rehabilitation and other mitigating evidence.

16

proceeding.

**IV**

We take the additional step of re-assigning the re-sentencing to a different district court judge.  This Court has considerable discretion in re-assigning a case for re-sentencing:

> Three considerations listed in United States v. Robin, 553 F.2d 8, 10 (2d Cir. 1977) (per curiam), are useful in deciding whether to reassign a case on remand: "(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous[,] . . . (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness."

United States v. DeMott, 513 F.3d 55, 59 (2d Cir. 2008) (per curiam) (alterations in original).

These three considerations favor reassignment.  First, Judge Platt has twice imposed a 405-month sentence without making the required findings or without providing the necessary assurance that all of the relevant factors have been considered, and therefore "may reasonably be expected to have substantial difficulty ignoring his previous views during a third sentencing proceeding."  Id.  Second,

17

although this record does not permit a finding that Judge Platt is personally biased against Hernandez, "an objective observer might nonetheless question [the judge's] impartiality." Id. Third, reassignment would not waste substantial judicial resources because the original sentencing and the appeal from it have already been accomplished, and the work of updating the record and re-weighing the Section 3553(a) factors has not yet been undertaken. Accordingly, we direct that this case be assigned to a different district court judge on remand.

**CONCLUSION**

We have considered all of the government's arguments in support of the judgment and have found them unpersuasive. For the foregoing reasons, we vacate the judgment and remand for re-sentencing before a different district court judge.

CALABRESI, *Circuit Judge*, concurring:

I join Chief Judge Jacobs's opinion in full, and am in complete agreement with its reasoning. I write separately because I believe that in addition to the procedural error Chief Judge Jacobs identifies, there is another independently sufficient reason to vacate the sentence and to remand the case to a different judge.

It seems to me that when there has been a gap of fifteen years between an original vacatur of a sentence and re-sentencing—a period during which the prisoner is held in jail without a valid final sentence—and when the circumstances surrounding that gap may lead an objective observer to conclude that it was caused in part by the behavior of the sentencing judge, it behooves us— in order to preserve the appearance of impartiality—automatically to assign the imposition of a new sentence to a new judge. And I believe that this is so regardless of whether the defendant moved for a new judge below.

When a judge has—through a combination of the judge's own inaction, of some government neglect, and, perhaps, of the prisoner's lack of complaint—failed to impose sentence for some fifteen years, an "objective observer" might question the judge's impartiality, *see United States v. DeMott*, 513 F.3d 55, 59 (2d Cir. 2008), regardless of the result the judge ultimately reaches. Consider three different possibilities:

(1) The judge imposes a lower sentence after the delay. This might lead an objective observer to think that the judge bent-over-backward and attributed undue weight to intervening defendant-favorable factors in order to salve the judge's own conscience for not acting sooner, or perhaps to punish the government for its neglect.

(2) The judge imposes the same sentence. This might lead an objective observer to suspect that the judge attempted to sweep the matter under the rug by suggesting (explicitly or

1

implicitly) that the delay was inconsequential and that nothing material to the proper sentence changed during the delay (even if it did).

(3) The judge imposes a higher sentence, which, absent a showing of actual vindictiveness is allowable in some cases. *See United States v. Singletary*, 458 F.3d 72, 76-79 (2d Cir. 2006). This would quite possibly lead an objective observer to wonder whether the judge improperly blamed the delay on the defendant for not bringing the matter to the court's attention. *See United States v. Ray*, 578 F.3d 184, 190-91, 200 (2d Cir. 2009) (finding, contrary to the district judge, that it is not a defendant's responsibility to bring about her own re-sentencing).

In each of these scenarios, the district judge might well have sentenced the defendant entirely appropriately. And I do not doubt that many district judges would be able to render a fair and impartial sentence even after participating in a significant delay. But that is beside the point. The question is whether an impartial observer could look at such a situation and be skeptical of impartiality. *See United States v. Campo*, 140 F.3d 415, 420 (2d Cir. 1998). I believe such skepticism is inevitable, and that in fact it is what, at least in part, properly underlies the majority opinion. *See* Maj. Op. at **[16]** (recognizing that the district court's "root error" in this case was to treat the vacated 405-month sentence as the "baseline" at re-sentencing).

What, however, of the fact that defendant did not raise the matter below, an action we normally require to avoid forfeiture or implied waiver? *See United States v. Bayless*, 201 F.3d 116, 127 (2d Cir. 2000). I do not think that failure to object can matter in this type of case. Apart from the general desire not to offend a sentencing judge, there is something else at work when unreasonable delay is involved, which, in contrast to most cases where recusal may be appropriate, makes any objection below unlikely. As noted above, a judge's reaction to a

2

significant sentencing delay can produce bias (or the appearance of bias) that cuts in either party's favor and does so unpredictably. Why, for instance, should the government ask for a change of judge and risk offending the original sentencing judge in circumstances where an objective observer might believe the judge could react to the delay by favoring the government and imposing the same or a harsher sentence? On the opposite side, why should the defendant risk offending the sentencing judge when an objective observer might believe that there is a fair chance that the judge will attempt to atone for the delay by giving a more lenient sentence? The appearance of impartiality in such circumstances is too important to leave to the whim of the parties. Impartiality, and its appearance, belongs to all of us, and to our justice system. *Cf. United States v. Nelson*, 277 F.3d 164, 206 (2d Cir. 2002) (recognizing the "fundamental, indeed foundational, role impartiality plays in our system of courts" and suggesting that the right to be tried before an impartial fact-finder might be unwaiveable).

The categorical rule I propose might not be appropriate if it were excessively costly. But, for the reasons stated in the majority opinion remand to a different judge in the instant case, reassignment in cases of this sort is unlikely to waste substantial judicial resources. The work of updating the record to account for changes during the period of delay is the same regardless of whether the case is reassigned. And the original sentencing judge's memory of the grounds for the long-ago vacated sentence is likely to be too weak a reed to bear much weight.

There is one additional objection to the approach that I am suggesting: the familiar problem of where to draw the line in response to extreme cases. *Cf. Caperton v. A.T. Massey Coal Co., Inc.*, 129 S. Ct. 2252, 2265-66 (2009). Is remand to a new judge automatically necessary after fifteen years, but not after ten? After ten years, but not after five? I need not answer that question today. Fifteen years seems to me long enough to make an objective

observer doubt the impartiality of the original sentencing judge, and that is what is before us now.  I would be more than satisfied if we held nothing more today, and let later panels decide subsequent cases on the same basis should additional cases involving substantial sentencing delay arise, as I sincerely hope they will not   In any event, the frequency of such unfortunate events is sufficiently small and the prevalence of automatic reassignment rules—whether formal or informal—sufficiently common that a simple automatic rule that requires assignment to a new judge whenever there is significant delay should present few administrative problems, and the result would be to further both the appearance of justice and the preservation of judicial resources.

For all of these reasons, while I agree that in this case the record demonstrates that the sentencing judge erred procedurally and hence that vacatur is necessary, I would vacate and remand to a different judge even in the absence of the specific errors the majority opinion has identified.