**UNITED STATES of America, Plaintiff—Appellee, Cross–Appellant,**

v.

**Keith Joon KIM, Defendant—Appellant. Cross–Appellee.**

Nos. 03–10043, 03–10090.
D.C. CR–01–00193–CRB.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 2004.

Decided April 5, 2004.

858

Patrick D. Robbins, USSF—Office of the U.S. Attorney, San Francisco, CA, for Plaintiff–Appellee.

Daniel H. Bookin, O'Melveny & Myers LLP, San Francisco, CA, for Defendant–Appellant.

Before HALL and GRABER, Circuit Judges, and WEINER, Senior District Judge.*

## MEMORANDUM**

Keith Joon Kim appeals in No. 03–10043 his jury trial conviction and sentence imposed for making a false statement to a government agent, in violation of 18 U.S.C. § 1001. The United States cross-appeals the sentence in No. 03–10090. We affirm the conviction, vacate the sentence and remand for resentencing with instructions.

[1] 1. The facts are well known to the parties and will be repeated only insofar as necessary to explain our decision. The false statement for which Kim was convicted was not fundamentally ambiguous.

Generally speaking, the existence of some ambiguity in a falsely answered question will not shield the respondent from a perjury or false statement prosecution. It is for the jury to decide in such cases which construction the defendant placed on a question. If, however, a question is excessively vague, or fundamentally ambiguous, the answer may not, as [a] matter of law, form the basis of a prosecution for perjury or false statement.

United States v. Culliton, 328 F.3d 1074, 1078 (9th Cir.2003) (per curiam) (citations and internal quotation marks omitted), cert. denied —— U.S. ——, 124 S.Ct. 1087, 157 L.Ed.2d 900 (2004). We look to the context of the allegedly false statement "to determine whether the defendant and his questioner joined issue on a matter of material fact to which the defendant knowingly uttered a false declaration." United States v. Sainz, 772 F.2d 559, 562 (9th Cir.1985).

The question here about Rattazzi's absence was not fundamentally ambiguous so as to permit us to override the jury's verdict. Both the question and answer are in the present tense, indicating that the SEC sought, and Kim provided, his present knowledge of the past event. Kim was on notice of the subject of the SEC inquiry and answered substantively the similar question regarding Mr. Yeager's absence. His ability to answer this question unequivocally supports the conclusion that he understood the context of the similar question concerning Mr. Rattazzi. There is nothing in the question asked upon which one might even mistakenly assume that the SEC sought only his knowledge as of a particular date in the past. The fact that the SEC Agent could have asked more or different questions is simply irrelevant to whether Kim understood the question actually asked.

■ 2. The district court did not violate the Confrontation Clause or abuse its discretion in its evidentiary rulings on the cross-examination of the SEC Agent. Defense counsel sought to confront her with the fact that the insider trading charges had been dismissed prior to trial, after she had spent significant time on the investigation, in order to show possible bias. Kim was permitted to put on evidence of the amount of time the Agent spent on the case and to argue bias based on that evidence. However, he failed to demonstrate any post-dismissal change in her testimony. The Agent played no role in the SEC's decision to drop the civil charges, nor in the decision not to appeal the dismissal. The dismissal of the counts occurred after her operative role in the case

* Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

had ended. Without evidence of a change in her testimony after the counts were dismissed, there was no predicate for impeachment based on bias arising from the dismissal and, thus, no abuse of discretion by the district court in barring the bias evidence.

■ Neither was the decision to keep out evidence of the other charges an abuse of discretion. Kim himself argued the evidence of the dismissed charges was overly prejudicial. The existence of the other charges would arguably have not only created prejudice, but also confusion of the issues before the jury. Given the lack of any evidence of recent fabrication, the evidence of the dismissed charges was permissibly excluded.

■ 3. Kim waived any objection to the government's introduction of the YPO's Rules and Rattazzi's testimony regarding confidentiality, as well as testimony of other members that they thought Kim's trades were illegal. Thus, our review on Kim's challenges to these evidentiary rulings is for plain error. *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000). As the evidence was properly admitted as relevant to the materiality element of the false statement charge, *see United States v. Oren*, 893 F.2d 1057, 1063 (9th Cir.1990) ("[M]ateriality is an essential element of a conviction for false statements" under 18 U.S.C. § 1001), there was no plain error in its admission.

■ 4. There was also no error in the curative instructions given during the trial, when evidence of the dismissed insider trading charge was mentioned. The court told the jury that Kim was "not on trial" for insider trading and the jury should not "speculate or consider in anyway [sic] whether he is criminally or civilly liable for insider trading." There was no abuse of discretion in the court's formulation of the curative instruction.

■ Kim's contention that the other curative instructions were inadequate is also without merit. Each expressed the point that Mr. Kim was not on trial for insider trading and gave the jury guidance on how to use the testimony for the purpose intended, i.e., to show the defendant's motive for lying to the SEC.

■ 5. The district court's exclusion of 138 days from Speedy Trial Act consideration to permit the government to decide whether to appeal the dismissal of the insider trading counts was also not error. Kim first contends that the district court's factual finding – that judicial resources would be saved by the delay – was clearly erroneous because the government would have dismissed the false statement count if the district court did not grant a stay pending appeal. The fact that the government would have dismissed Count 4 does not render the factual finding clearly erroneous, because it remains true that the same evidence and witnesses would have proved both the dismissed and undismissed counts.

Kim's two legal arguments are: (1) that conservation of judicial resources was not a proper ground for an "ends of justice" exclusion; and (2) giving the government time to decide to take an interlocutory appeal is not a proper ground for an "ends of justice" exclusion. Neither argument has merit. Kim concedes that the four bases for exclusion listed in the "ends of justice" exclusion are not exclusive, *see* 18 U.S.C. § 3161(h)(8)(B) (listing the "factors, among others, which a judge shall consider"). He nonetheless asserts our precedents show the provision's limited scope. *See, e.g., United States v. Perez–Reveles*, 715 F.2d 1348, 1352–53 (9th Cir.1983) (holding that time to negotiate plea not excludable under "ends of justice" provi-

sion); *United States v. Jordan,* 915 F.2d 563, 565 (9th Cir.1990) (stating that "ends of justice" exclusion was intended to be rarely used and is not a general exclusion for every delay; continuance granted under it must be based on specific factual circumstances).

Kim's argument is not persuasive. Here the exclusion was based on a specific factual circumstance—the filing of the interlocutory appeal, and not just upon the arguably more amorphous ground of conservation of judicial resources. Kim can hardly argue this "ends of justice" exception was clear error since a "delay resulting from any interlocutory appeal" is itself excludable under § 3161(h)(1)(E). More importantly, during most of the time excluded the United States had actually filed the appeal. This time was thus excludable under § 3161(h)(1)(E), without resort to the "ends of justice" provision. The only time during which the government was "determining" whether to file was the five days from November 30 to December 4. The exclusion of these five days on an "ends of justice" rationale was not clearly erroneous.

■ 6. Kim argues, and the government concedes, that the district court failed to provide notice to Kim that it intended to depart upward on the fine it imposed and, thus, violated Fed.R.Crim.P. 32(h). Accordingly, the sentence must be vacated.

■ 7. On its cross-appeal, the government argues the district court erred in refusing to apply the sentencing guideline for obstruction of justice, U.S.S.G. § 2J1.2, to Kim's offense conduct. The base offense level for a violation of 18 U.S.C. § 1001 is usually determined under U.S.S.G. § 2B1.1, the guideline for offenses involving fraud and deceit. However, pursuant to a cross-reference contained in § 2B1.1(c)(3), if a defendant is convicted under § 1001, the crime does not involve firearms, explosives, or arson type crimes, and "the conduct set forth in the count of conviction *establishes* an offense specifically covered by another guideline in Chapter Two (Offense Conduct), apply that other guideline." U.S.S.G. § 2B1.1(c)(3) (emphasis added). The government argues that Kim's conduct was "more closely related" to another Chapter Two offense guideline, namely U.S.S.G. § 2J1.2 – Obstruction of Justice.

The district court determined that using the cross-reference in order to apply § 2J1.2 was not appropriate because the telephone interview of Kim was merely an informal inquiry, made before the SEC issued its formal order of authority authorizing subpoena power; thus, there was no "pending proceeding" when the Agent phoned Kim. See 18 U.S.C. § 1505.

We need not decide whether the telephone interview was a "pending proceeding." Irrespective of whether it was, the district court could not have used the cross-reference. U.S.S.G. § 2B1.1(c)(3) requires that the conduct set forth in the count of conviction "establish[ ]" the other offense in order for its guideline to apply. Even assuming that the "pending proceeding" element was satisfied, the intent element of § 1505 is clearly lacking.

The requisite intent to violate § 1505 is that the "defendant must have acted 'corruptly,' i.e., that the act must have been done with the purpose of obstructing justice." *United States v. Price,* 951 F.2d 1028, 1031 (9th Cir.1991) (quoting *United States v. Laurins,* 857 F.2d 529, 536–37 (9th Cir.1988) (defendant must have intentionally endeavored corruptly to influence, obstruct or impede)). In contrast, the mens rea needed to violate § 1001 does not require evil intent, but only that the defendant act "deliberately and with knowledge." *United States v. Heuer,* 4 F.3d 723, 732 (9th Cir.1993) (internal quo-

tation marks omitted); *see also United States v. Carrier*, 654 F.2d 559, 561 (9th Cir.1981) (stating that the word "willful" in § 1001 means no more than that the forbidden act is done "deliberately and with knowledge" (internal quotation marks omitted)). Thus, the indictment's generalized mens rea allegation of intent to violate § 1001 was not sufficient to allege the more specific mens rea required to violate § 1505. Whether or not the government proved the heightened mens rea at trial is immaterial; under the terms of the cross-referenced provision, the statutory element had to be established by the allegations of the indictment.

Accordingly, on the government's cross-appeal, there was no error in the district court's refusal to apply the obstruction guideline.

CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED.