**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 9, 2009

Charles R. Fulbruge III
Clerk

No. 08-51224

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

GABRIEL ARTURO GARCIA

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, WIENER and BARKSDALE, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Gabriel Arturo Garcia ("Garcia") was convicted on his plea of guilty without a plea agreement to one count of making a false statement in violation of 18 U.S.C. § 1001(a)(2). Garcia now appeals his sentence, contending that the district court erred by sentencing him pursuant to a base offense level for alien smuggling. Finding no reversible error in the district court's application and interpretation of the United States Sentencing Guidelines ("the Guidelines"), we affirm.

## I. FACTS AND PROCEEDINGS

**A.     Facts**

Accompanied by two female adult passengers and two children, Garcia drove his pickup truck from Mexico to the Ysleta Port of Entry near El Paso,

Texas. At the border station, an officer asked Garcia about his citizenship and the citizenship of his passengers. Garcia, a U.S. citizen, responded that he and his passengers were all U.S. citizens. After Garcia presented the officer with a valid Colorado birth certificate, the officer asked for the names and birth certificates of Garcia's passengers. Garcia responded that his passengers were (1) his sister, Ysenia Zamora, (2) his friend, Annette Eustolia Moctezuma, (3) his niece, a minor, and (4) his son, also a minor. Garcia's passengers all presented the officer with Colorado birth certificates.

Suspicious that Moctezuma might not be a U.S. citizen, the officer asked her specifically how she knew the other passengers, to which she replied that they were all friends from Colorado. According to the border patrol officer, Garcia then began to attempt to distract the officer, joking that Moctezuma's middle name — "Eustolia" — was "ugly." The officer, however, continued to question Moctezuma, asking her whether she was a U.S. citizen. Moctezuma answered that she was a U.S. citizen and that she had been born in Colorado. The officer then asked her why she had been in Ciudad Juarez and, again, how she knew the other passengers. This time, Moctezuma paused before responding, in Spanish, that she had just moved to Colorado a year ago from Mexico. Believing that Moctezuma was not a U.S. citizen, the officer declined to admit Garcia or his passengers into the country and instead referred them to a secondary processing area for further investigation.

When questioned at the secondary area about his passengers, Garcia stated that he had first met Moctezuma in Colorado about four months ago. Under further questioning, however, he soon revised his story, explaining that

in fact he had met her only five days earlier in Ciudad Juarez. Garcia then added that Moctezuma had asked him for a ride to Colorado.

After speaking with Garcia, the border officer interviewed Moctezuma separately. It was during this interview that Moctezuma admitted that her true name was Brenda Valdez-Flores and that she was a Mexican citizen without proper documentation to enter or remain in the United States. Valdez-Flores further explained that the minor whom Garcia had identified as his son was in fact her child, also a citizen of Mexico, who similarly lacked proper documentation to enter the United States. Valdez-Flores stated that her estranged husband had taken her other son to Colorado without her consent and that she had intended to travel to Colorado to retrieve her child. According to Valdez-Flores, Garcia had known all along that she was not a U.S. citizen and had even obtained birth certificates from his family members so that she and her son could present valid documents at the border to gain admission into the country.

When the border officer later confronted Garcia with this information, Garcia admitted that he had known all along that Valdez-Flores and her son were not U.S. citizens and did not have the proper documentation to enter or remain in the country. Garcia claimed that he had lied to the border patrol officer to protect Valdez-Flores and her son. At this time, Garcia was placed under arrest and read his *Miranda* rights, following which he requested the assistance of counsel and declined to speak with the officer further.

**B.    Proceedings**

**1.    Rearraignment**

Garcia was charged in a one-count indictment with a violation of 18 U.S.C. § 1001(a)(2), which makes it a crime for any person, "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, [to] knowingly and willfully ... make[] any materially false, fictitious, or fraudulent statement or representation."  Specifically, the indictment charged that Garcia

> did knowingly and willfully make a materially false, fictitious and fraudulent statement and representation in that [he] said that the female passenger in the vehicle he was driving was a United States citizen when in truth and in fact, [he] *knew that the female passenger was a citizen of Mexico and that* [his] *false statements were attempts to aid the female passenger's entry into the United States, in violation of Title 18, United States Code, Section 1001(a)(2).*

(Emphasis added).

At Garcia's rearraignment, the district court explained the elements of the offense to Garcia as follows:

> Mr. Garcia, if you were to proceed to trial on the single-count Indictment, for you to be convicted of having made a false material statement, the Government would be obligated to prove beyond a reasonable doubt that you did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation, that you said that the female passenger in the vehicle which you were driving was a United States citizen, that you knew that the female passenger was a citizen of Mexico, and that you falsely made the statement *in an attempt to aid the female passenger's entry into the United States.*

(Emphasis added).

4

The district court then instructed the government to read the contents of the factual basis into the record. In pertinent part, the factual basis, as recited by the government, alleged that

> Garcia [had] stated to the United States Customs and Border Protection officer that [his] female passengers were United States citizens. Garcia and the passengers of the vehicle were referred to the secondary inspection area. In the secondary inspection area, Garcia admitted to the United States Customs and Border Protection officer that he knew that one of the passengers was not a citizen of the United States but a citizen of Mexico with no documents to legally enter or remain in the United States.

When the district court asked Garcia whether he agreed with the government's recitation of the factual basis, Garcia answered that everything in the factual basis was correct. Garcia then pleaded guilty to the one-count indictment without a plea agreement.

## 2. Sentencing

The probation officer who compiled Garcia's presentence report declined to recommend U.S.S.G. § 2L2.1 (the base offense level for making a false statement regarding the citizenship of another), and instead recommended that the district court apply § 2L1.1(a)(3) (the base offense level for alien smuggling). In Garcia's case, the base offense level for making a false statement regarding the citizenship of another would have been 11; the alien-smuggling provision applied by the probation officer, however, called for a base offense level of 12.

Because the probation officer found that Garcia had committed the offense "for other than profit," the officer recommended that the district court apply a three-level reduction. The officer also recommended a two-level reduction based on Garcia's acceptance of responsibility, resulting in a total offense level of

5

seven. Garcia's extensive record of arrests and convictions indicated a criminal history category of VI. Thus, pursuant to the probation officer's calculations, the guidelines sentencing range called for a term of 15 to 21 months' imprisonment. If, on the other hand, the officer had applied the provision for making a false statement regarding the citizenship of another, Garcia's initial offense level would have been 11, and his sentencing range, after reductions, would have been 12 to 18 months.

Garcia timely objected to the presentence report, contending that the probation officer had applied the incorrect provision for calculating Garcia's base offense level. According to Garcia, the probation officer should have calculated the base offense level by applying § 2L2.1, the provision applicable to "false statement[s] in respect to the citizenship or immigration status of another." Garcia contended that § 2L1.1 — having to do with alien smuggling — was inapplicable because he had neither been charged with nor convicted of smuggling or attempting to smuggle an alien into the country.

In response to Garcia's objection, the probation officer filed an addendum to the PSR, declining to credit the objection or amend the report. In the addendum, the probation officer defended the application of the alien-smuggling provision by explaining that Garcia had not only "provided a false statement to [border] officers [in] reference [to] the citizenship or immigration status of the female passenger (Brenda Valdez-Flores) in the vehicle he was operating, but did so in a manner to facilitate the illegal entry of the female passenger into the United States." The probation officer also noted as persuasive Valdez-Flores's conviction for illegal re-entry resulting from the same events that gave rise to the charge against Garcia.

At sentencing, the district court adopted the findings and recommendations of the presentence report, overruling Garcia's objection that the application of the alien-smuggling provision was inappropriate. Noting as persuasive Garcia's extensive criminal history, the court sentenced Garcia to 20 months' imprisonment, followed by three years' supervised release. Garcia now appeals his sentence, contending that the district court erred in applying the provision for alien-smuggling to calculate his advisory guidelines sentencing range.

## II. LAW AND ANALYSIS

### A. Standard of review

We review the district court's factual findings for clear error and its interpretation and application of the Guidelines, including any cross-reference provisions, de novo.[1]

### B. Analysis

Faced with a res nova issue for this circuit, *viz.*, under what circumstances a district court may apply a cross-reference provision pursuant to U.S.S.G. § 2B1.1(c)(3), we begin our analysis at 18 U.S.C. § 1001(a)(2), the criminal statute prohibiting the making of a false statement. U.S.S.G. Section 2B1.1 — the provision generally applicable to convictions under § 1001(a)(2) — indicates a base offense level of six.[2] As the Guidelines note, however, because § 1001(a)(2) prohibits the making of *any* false statement within the jurisdiction of the government, a defendant's conduct will often be "more aptly covered by another

---

[1] *United States v. Hicks*, 389 F.3d 514, 529 (5th Cir. 2004) (reviewing de novo the district court's application of a cross-reference provision for second-degree murder).

[2] United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1(a)(2).

guideline."[3] For this reason, Section 2B1.1(c)(3) sets out three criteria for determining whether another, more specific cross-reference provision should be used for sentencing the defendant on the offense of conviction:

> If (A) neither subdivision (1) [pertaining to firearms] nor (2) [pertaining to arson or explosives] of this subsection applies; [and] (B) the defendant was convicted under a statute proscribing false, fictitious, or fraudulent statements or representations generally (*e.g., 18 U.S.C. § 1001* …); and (C) the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline in Chapter Two (Offense Conduct), apply that other guideline.[4]

As (a) Garcia's offense did not involve firearms or arson, (b) he was convicted under 18 U.S.C. § 1001(a)(2), which proscribes false statements, and (c) the conduct set forth in his count of conviction *does* establish an offense "specifically covered" by another guideline (as discussed below), it was appropriate for the district court to apply a cross-reference provision to determine Garcia's base offense level. The determinative question, though, is whether the district court applied the correct provision.

---

[3] *Id.* § 2, app. n. 15.

[4] U.S.S.G. § 2B1.1(C)(3) (emphasis added). As Application Note 15 explains,

> [s]ubsection (c)(3) provides a cross reference to another guideline in Chapter Two (Offense Conduct) in cases in which the defendant is convicted of a general fraud statute, and the count of conviction establishes an offense involving fraudulent conduct that is more aptly covered by another guideline. Sometimes, offenses involving fraudulent statements are prosecuted under 18 U.S.C. § 1001, or a similarly general statute, although the offense involves fraudulent conduct that is also covered by a more specific statute.

*Id.* § 2, app. n. 15.

As noted, Garcia contends that the district court should have referenced the provision applicable to the making of a false statement in respect to the citizenship of another. According to Garcia, the conduct underlying his conviction is "specifically covered" by 8 U.S.C. § 1185(a)(3), which makes it a crime "for any person knowingly to make any false statement in an application for permission to depart from or enter the United States with intent to induce or secure the granting of such permission either for himself or for another."[5] Pursuant to Appendix A of the Sentencing Guidelines, the appropriate cross-reference provision for that offense would be either U.S.S.G. § 2L2.1 or § 2L2.2. Section 2L2.1, which specifically applies to any "False Statement in Respect to the Citizenship or Immigration Status of Another," calls for a base offense level of 11; Section 2L2.2, on the other hand, calls for a base offense level of eight.[6] In response, the government counters that the district court correctly applied U.S.S.G. § 2L1.1, which specifically covers "Smuggling, Transporting, or Harboring an Unlawful Alien" and calls for a base offense level of 12.[7]

We next turn our focus to Appendix A of the Guidelines, which offers helpful guidance on this issue and "specifies the offense guideline section(s) ... applicable to [a] statute of conviction."[8] Unfortunately, the district court in the instant case did not explain which criminal statute it believed "specifically

---

[5] 8 U.S.C. § 1185(a)(3).

[6] U.S.S.G. § 2L2.1.

[7] *Id.* § 2L1.1.

[8] *Id.*, Appendix A, Introduction. Appendix A further instructs that, "[i]f more than one guideline section is referenced for the particular statute, use the guideline most appropriate for the offense conduct charged in the count of which the defendant was convicted." *Id.*

covered" Garcia's conduct. And, there are at least four relevant criminal statutes listed in Appendix A that might apply: 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(A)(iii), 1185(a)(2), and 1185(a)(3). We will review each in turn.

First, 8 U.S.C. § 1324(a)(1)(A)(ii), the statute that the government contends should be applied here, imposes criminal penalties on any person who

> knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law.[9]

Second, 8 U.S.C. § 1324(a)(1)(A)(iii) imposes criminal penalties on any person who

> knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal harbor, or shield from detection, such alien in any place, including any building or any means of transportation.[10]

Pursuant to Appendix A, both of the above statutes should be cross-referenced to U.S.S.G. § 2L1.1. This is the provision that the district court applied in the instant case to set Garcia's base offense level at 12.

Third, 8 U.S.C. § 1185(a)(2) references alien smuggling, making it a crime

> for any person to transport or attempt to transport from or into the United States another person with knowledge or reasonable cause to believe that the departure or entry of such other person is forbidden....[11]

---

[9] 8 U.S.C. § 1324(a)(1)(A)(ii).

[10] 8 U.S.C. § 1324(a)(1)(A)(iii).

[11] 8 U.S.C. § 1185(a)(2).

Pursuant to Appendix A, this statute, like the other alien-smuggling statutes, cross references to U.S.S.G. § 2L1.1, which calls for a base offense level of 12.

Fourth, 8 U.S.C. § 1185(a)(3), the statute that Garcia contends should be applied here, makes it a crime

> for any person knowingly to make a false statement in an application for permission to depart from or enter the United States with intent to induce or secure the granting of such permission either for himself or for another.[12]

Pursuant to Appendix A, this statute — unlike the alien-smuggling statutes — should be cross-referenced to U.S.S.G. § 2L2.1, which covers "False Statement[s] in Respect to the Citizenship or Immigration Status of Another" and calls for a base offense level of 11.[13]

The government contends that § 1185(a)(3) is inapplicable to the instant case, as both that statute and U.S.S.G. § 2L2.1 apply primarily to document-fraud cases. According to the government, the conduct alleged in Garcia's indictment — to which he pleaded guilty — clearly supports the district court's conclusion that, at least for sentencing purposes, Garcia had engaged in alien smuggling. Garcia counters that the making of a false statement, the crux of his offense conduct, is not a required element in any of the alien-smuggling statutes calling for a base offense level of 12. Further, according to Garcia, there is nothing in U.S.S.G. § 2L2.1 that expressly limits the applicability of that provision to document fraud cases.[14]

---

[12] 8 U.S.C. § 1185(a)(3).

[13] U.S.S.G., Appendix A.

[14] Although we need not determine whether, as the government contends, the application of U.S.S.G. § 2L2.1 is limited to cases involving document fraud, we note that there

11

We find persuasive the reasoning of several other circuits which, after considering this same issue, have held that a sentencing court may apply a cross-reference provision under U.S.S.G. § 2B1.1(c)(3) only if the application of that provision is supported by the conduct alleged in the indictment.[15] For example, in *United States v. Genoa*, the Second Circuit held that a district court may cross reference another guideline provision "only if the conduct alleged in the count of the indictment of which the defendant is convicted establishes the elements of another offense."[16] Similarly, in *United States v. Bah*, the Eighth Circuit explained that "a plain reading of [Section 2B1.1(c)(3)] establishes that the district court may look only to the conduct set forth in the count of conviction

is ample evidence suggesting such a limitation. For example, § 2L2.1 is located in the Guidelines chapter entitled "Naturalization and Passports" (whereas § 2L1.1, the alien-smuggling provision, is in the section titled simply "Immigration"). Further, § 2L2.1 includes a specific enhancement based on the number of documents involved in the fraud. And, finally, other courts of appeal have held that it is the appropriate provision for, *e.g.*, (1) counterfeiting social security cards for illegal aliens, *United States v. Kuku*, 129 F.3d 1435 (11th Cir. 1997)), (2) submitting false asylum applications on behalf of immigrants, *United States v. Walker*, 191 F.3d 326 (2d Cir. 1999); and (3) possessing a counterfeit immigration stamp, *United States v. Viera*, 149 F.3d 7 (1st Cir. 1998). But, even if Garcia were correct that 8 U.S.C. § 1185(a)(3) — and, similarly, U.S.S.G. § 2L2.1 — were not limited to cases involving document fraud, we would doubt that Garcia's conversation with the border officer could accurately be characterized as "an application for permission to enter the country" such that it would fall within the ambit of either provision.

[15] *See United States v. Genao*, 343 F.3d 578, 583 (2d Cir. 2003) (holding that district court had correctly declined to apply a cross-reference provision under 2B1.1(c)(3) because the indictment did not allege the exact elements of the cross-referenced offense); *see also United States v. Bah*, 439 F.3d 423, 427 (8th Cir. 2006) (adopting *Genao* and holding that the plain language of 2B1.1(c)(3) requires that district courts may only look to "the conduct set forth in the count of conviction" to determine whether the cross-reference provision should apply); *United States v. Kim*, 95 Fed. Appx. 857, 861-62 (9th Cir. 2004) (providing that, in order for the cross-reference provision to apply, "the statutory element had to be established by the allegations of the indictment").

[16] *Genao*, 343 F.3d at 583.

when determining whether the cross-reference applies."[17]   Adopting the reasoning of these other circuits, we hold that a district court may only apply a cross-reference provision under U.S.S.G. § 2B1.1(c)(3) if the facts alleged in the count of conviction support the application of that provision.

When we apply this standard to the instant case, we conclude that the district court did not err when it referred to U.S.S.G. § 2L1.1 to determine Garcia's base offense level.  Garcia's "count of conviction" — Count 1 of the one-count indictment — alleges that he made a false statement about his passenger's citizenship to a border officer in an attempt "to aid the female passenger's entry into the United States."  The alien-smuggling statute, § 1185(a)(2), expressly covers this conduct when it makes it a crime for "any person to transport or attempt to transport from or into the United States another person with knowledge or reasonable cause to believe that the departure or entry of such other person is forbidden by this section."[18]  The district court was on firm ground in concluding that Garcia's base offense level was 12.

---

[17]  *Bah*, 439 F.3d at 427.  At least one district court in this circuit has already turned to these other decisions for guidance.  In *United States v. Rodriguez*, the district court explained:

> While the Fifth Circuit has not addressed this issue, other circuits have adopted [a] limitation, allowing a district court to cross-reference another guideline provision only if the conduct alleged in the count of the indictment of which the defendant is convicted establishes the elements of another offense.  Therefore, to sentence Defendant pursuant to the cross-referenced [provision], the Court must be able to determine that the conduct described in the count of conviction in Defendant's indictment, standing alone, also constitutes a violation of an offense covered by [the cross-referenced provision].

493 F. Supp. 2d 833, 834 (W.D. Tex. 2007).

[18]  8 U.S.C. § 1185(a)(2).

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is, in all respects,

AFFIRMED.