21-518-pr
Aronshtein v. United States

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of April, two thousand twenty-three.

PRESENT: BARRINGTON D. PARKER,
GERARD E. LYNCH,
RAYMOND J. LOHIER, JR.,
*Circuit Judges.*

------------------------------------------------------------------

DIMITRY ARONSHTEIN,

*Petitioner-Appellant,*

v.                                                    No. 21-518-pr

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

------------------------------------------------------------------

FOR PETITIONER-APPELLANT:   EZRA SPILKE (Vivian Shevitz, *on the brief*), Law Offices of Ezra Spilke, Brooklyn, NY

FOR RESPONDENT-APPELLEE:   MATHEW ANDREWS, Assistant United States Attorney (David Abramowicz, Assistant United States Attorney, *on the brief*) *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (George B. Daniels, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED.

Petitioner Dimitry Aronshtein appeals from a judgment of the United States District Court for the Southern District of New York (Daniels, J.) denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255.   Aronshtein argues that his conviction for money laundering conspiracy under 18 U.S.C. § 1956(h) must be vacated because his original counsel provided ineffective assistance during his trial and direct appeal.   We assume the parties' familiarity with the underlying facts and the record of prior proceedings, to which we refer

only as necessary to explain our decision to affirm.

We review de novo the District Court's denial of Aronshtein's § 2255 motion "because it presents only questions of law." Collier v. United States, 989 F.3d 212, 217 (2d Cir. 2021). To demonstrate that he received ineffective assistance of counsel, Aronshtein

> must meet the two-pronged test established by Strickland [v. Washington, 466 U.S. 668 (1984)]: (1) he must show that counsel's performance was . . . so deficient that, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance, and (2) he must show that the deficient performance prejudiced the defense, in the sense that there is a reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different.

Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (cleaned up). Defense counsel's failure to raise an argument is not necessarily evidence of ineffective assistance because "the Sixth Amendment does not require counsel to raise every non-frivolous argument a client requests." Weingarten v. United States, 865 F.3d 48, 53 (2d Cir. 2017).

Aronshtein's money laundering conspiracy conviction required the Government to show that he "conspire[d] to commit" a money laundering

offense.   18 U.S.C. § 1956(h).   Such an offense "requires first that the proceeds of specified unlawful activity be generated, and second that the defendant, knowing the proceeds to be tainted, conduct or attempt to conduct a financial transaction with these proceeds."   United States v. Piervinanzi, 23 F.3d 670, 679–80 (2d Cir. 1994); see also United States v. Napoli, 54 F.3d 63, 67 (2d Cir. 1995), abrogated on other grounds by the U.S. Sentencing Guidelines as recognized in United States v. Genao, 343 F.3d 578, 584 (2d Cir. 2003).   Accordingly, the Government was required to show that proceeds of the "specified unlawful activity" were "realized" and "acquire[d]" before some "further financial transaction[] involving the proceeds" took place.   Napoli, 54 F.3d at 68.

Aronshtein claims that the money laundering conspiracy charge "merged" with and was simply part of the predicate unlawful activity — in this case, bribery.   In determining whether such a defense precludes a money laundering conviction, "the central inquiry is one of distinctness, not timing."   United States v. Szur, 289 F.3d 200, 214 (2d Cir. 2002).   A court must ask whether "the government presented sufficient evidence to establish distinct offenses."   Id. Accordingly, a single "larger scheme" can be divided into a predicate crime and

4

a subsequent transaction that constitutes money laundering, as long as those transactions are distinct. Id. (holding as such in a wire fraud scheme). Faced with "a series of financial transactions," a jury may permissibly "conclud[e] that one of the subsequent transfers was [a predicate crime] and that a later subsequent transfer was money laundering." United States v. Sabbeth, 262 F.3d 207, 216 n.9 (2d Cir. 2001) (emphasis omitted); see Szur, 289 F.3d at 214 ("[F]unds become proceeds when they are derived from an already completed offense, or a completed phase of an ongoing offense." (quotation marks omitted)).

Aronshtein's claim that there was insufficient evidence to establish that the charged money laundering transactions were distinct from the underlying bribery payments could not have prevailed. Aronshtein and his coconspirators together engaged in two separate sets of transactions. Aronshtein first sent money from his business—money received as a result of the scheme to defraud the City of New York—to a group of entities (which the Government labels the "First-Tier Shells") that he did not control. The "First-Tier Shells" then sent money to accounts and other entities (which the Government labels the "Second-Tier Shells") controlled by Mark Mazer, Aronshtein's co-defendant and

5

coconspirator whom Aronshtein sought to bribe with kickbacks. The initial transfers involving the First-Tier Shells were intended to bribe Mazer. Once those transfers were complete, the proceeds of the bribery were realized. Szur, 289 F.3d at 214 ("[T]he funds comprised 'proceeds' at the moment they were in the control of the perpetrators." (quotation marks omitted)). The distinct subsequent transfers involving the Second-Tier Shells constituted money laundering. See id.; Sabbeth, 262 F.3d at 216 n.9. Accordingly, Aronshtein's counsel was not deficient for failing to raise the claim at trial or on appeal.

Aronshtein resists this conclusion by arguing that "the fact of sequential payments does not establish the character of the payments." Appellant's Reply Br. 12. He attempts to distinguish Szur by arguing that the fraudulent scheme in that case involved a "two-step process," as opposed to the "one step" in this case: his direct participation in only one set of transactions to the First-Tier Shells. Id. at 13. We are not persuaded that the allegedly shared "character" of the distinct transactions is relevant. In Sabbeth, for example, we relied on the existence of "a series of financial transactions" to uphold a money laundering conviction, even though we grouped those transactions together as a single type

6

of transaction.   262 F.3d at 211, 216 n.9 (emphasis omitted).

Unable to show any violation of the rule that money laundering must involve proceeds of a separate crime, Aronshtein argues in the alternative that his counsel should have argued that there was insufficient evidence that Aronshtein knew that the bribes to Mazer would be laundered through transfers from one Mazer-controlled shell company to another before Mazer ultimately gained possession of the kickbacks.   Aronshtein did not make this argument in his opening brief on appeal and therefore abandoned it.   See Green v. Dep't of Educ., 16 F.4th 1070, 1074 (2d Cir. 2021) (noting that issues "not address[ed] in [an] opening brief . . . are . . . abandoned").   But even if he had made the argument, we would have found it unpersuasive.   A reasonable juror could have inferred from the trial evidence, including Aronshtein's various efforts to conceal the scheme and the kickbacks, that Aronshtein knew that Mazer intended to launder the bribes and that Aronshtein sought to help bring about that result.   Cf. United States v. Huezo, 546 F.3d 174, 177, 181-82 (2d Cir. 2008) (finding "sufficient circumstantial evidence . . . to support an inference that [a defendant] knew about [a money laundering] conspiracy and acted with the

7

specific intent to participate in it" where the defendant, who resided in the same house as his coconspirators, helped transport money to an undercover officer posing as a money launderer).   We therefore reject Aronshtein's claim of ineffective assistance of counsel.   See Gonzalez, 722 F.3d at 130.

We have considered Aronshtein's remaining arguments and conclude that they are without merit.   For the foregoing reasons, the judgment of the District Court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court
